IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BEAUFORT DEDICATED NO. 5            )
LIMITED, ON BEHALF OF               )
SYNDICATE 1318 AT LLOYD'S,          )
and BEAUFORT DEDICATED NO. 2        )
LIMITED ON BEHALF OF SYNDICATE      )
318 AT LLOYD'S,                     )
                                    )
            Plaintiffs,             )
                                    )
        v.                          )          1:11-cv-673
                                    )
ROBERT BRADLEY,                     )
                                    )
            Defendant.              )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

This case involves a dispute over insurance coverage for damage resulting from a broken water pipe in a residence located in Durham, North Carolina ("the Property"). Plaintiffs, two syndicates at Lloyd's London, filed this action seeking rescission of their insurance policy for the Property and a declaratory judgment that they have no duty to indemnify the loss under various theories of concealment, fraud, and limitation of liability. (Doc. 1.) Defendant Robert Bradley ("Bradley"), one of the alleged owners of the Property, now moves to dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19 for failure to join necessary parties or, in the alternative, to stay it pending the outcome of a

related state-court proceeding he and other Property owners have since filed against Plaintiffs and other allegedly responsible parties. (Doc. 4.) Following briefing by the parties, the court held a hearing on July 13, 2012, and at the court's invitation Plaintiffs filed a second amended complaint on July 23, 2012, to address subject matter jurisdiction concerns raised by the court. (Doc. 16.) Bradley responded on July 30, 2012, renewing his motion to dismiss or stay.[1] (Doc. 17.) The matter is now ripe for decision. For the reasons stated below, Bradley's motion to dismiss will be denied but his motion to stay will be granted.

## I. BACKGROUND

Plaintiffs' current complaint[2] alleges the following:

---

[1] Bradley also filed an "Objection to [First] Amended Complaint and Motion to Stay Proceedings Pursuant to Federal Rules 12(b)(7) and 19," which renewed his earlier motion to dismiss (Doc. 4). (Doc. 12.) Because Plaintiffs subsequently filed a second amended complaint, Bradley's objection (Doc. 12) is moot.

[2] The court sua sponte raised the question whether the original complaint invoked the court's diversity jurisdiction, and the court permitted Plaintiffs to amend it twice to sufficiently allege the citizenship of the parties to satisfy the court's inquiry. Plaintiffs' second amended complaint alleges the citizenship of all parties, including the "names" (members) of Plaintiffs, and the court is now satisfied they are diverse in that all Plaintiffs (and their names) are a combination of aliens and citizens of states other than North Carolina, and Bradley is a citizen of North Carolina. Bradley also argues that Plaintiffs have failed to meet the required amount in controversy because if they are successful, they would only be required to return Bradley's $3,551.35 premium. (Doc. 13 at 5, 6.) However, in actions seeking declaratory relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977) (citing cases). "When an insurer

2

On July 10, 2009, Bradley submitted an application for insurance on the Property, which he represented was a dwelling rented as a primary residence. (Doc. 16 ¶ 8.) A renewal application was submitted on July 10, 2010. (Id. ¶ 9.) In reliance on the application, Plaintiffs issued a policy with $1.56 million in coverage for the Property plus $156,000 for other structures. (Id. ¶¶ 10–11.) Thereafter, Bradley presented a claim for damages from a flood-related loss that allegedly occurred on the Property on January 9, 2011. (Id. ¶ 12.) At a 2011 examination under oath, Bradley testified that the Property had remained vacant from the time of purchase until the date of the loss. (Id. ¶¶ 13–14.)

Plaintiffs filed this action on August 23, 2011, naming Bradley as the sole Defendant. The current complaint seeks the following relief: (1) rescission of the policy for concealment and misrepresentation of material facts and a declaration that the policy is *void ab initio* (Count One); (2) declaratory judgment that Plaintiffs have no duty to indemnify Bradley for the loss because the Property was not an occupied dwelling

_____

seeks a declaratory judgment regarding the coverage provided by an insurance policy, the object of the litigation is the policy and the value of the right to be protected is plaintiff's potential liability under that policy." M.C. Constr. Corp. v. Gray Co., 17 F. Supp. 2d 541, 545 (W.D. Va. 1998) (quoting St. Paul Reinsurance Co. v. Greenberg, 134 F.3d 1250, 1252[, 1253] (5th Cir. 1998)). Thus, the court is satisfied that it has subject matter jurisdiction under 28 U.S.C. § 1332(a)(3), and the second amended complaint is the operative pleading.

(Count Two); (3) declaratory judgment that Plaintiffs have no duty to indemnify for the loss because of Bradley's concealment and misrepresentation of material facts and related but unidentified damages (Count Three); and (4) declaratory judgment that if Plaintiffs are liable, they are only liable to Bradley for his one-sixth interest in the Property (Count Four). Counts Two through Four are stated alternatively to Count One.

On November 7, 2011, two-and-one-half months after Plaintiffs initiated this action but a day before Bradley's response to the initial complaint was due, Bradley and the five other putative owners of the Property filed a state-court lawsuit to recover for their loss. (See Doc. 4-1.) In addition to naming the Plaintiffs in this case, the state-court complaint names as defendants Commonwealth Underwriters, Ltd. ("Commonwealth") (a Virginia-based insurance company authorized by Plaintiffs to place and write insurance policies, including the instant policy) and John E. Gilchrist ("Gilchrist") (a North Carolina independent insurance agent who participated in procuring the policy). (Id. ¶¶ 2-3, 11-13, 58-60.) The plaintiffs in the state-court lawsuit have alleged the following claims: breach of the insurance contract against Lloyd's; waiver/ratification by Lloyd's of Commonwealth's and Gilchrist's actions; estoppel against Lloyd's based (in part) on Commonwealth's and Gilchrist's actions as agents; unfair and

4

deceptive trade practice against Lloyd's; fraud and bad faith against Lloyd's by ignoring information known by alleged agents, Commonwealth and Gilchrist; breach of fiduciary duty by all defendants; breach by Commonwealth and Gilchrist of their agreement to procure insurance; negligence by Commonwealth and Lloyd's; unfair and deceptive trade practices by Commonwealth and Lloyd's; negligence by Gilchrist, imputed to Commonwealth and Lloyd's; and unfair and deceptive trade practices by Gilchrist, imputed to Commonwealth and Lloyd's. Central to the allegations of the state-court plaintiffs is the assertion that Bradley did not sign the policy application, renewal form, or other documents related to the application, but rather that Commonwealth and/or Gilchrist signed it for him (and misspelled his signature on both). (See, e.g., Doc. 4-1 ¶¶ 48, 137, 140, 208(b), 218(b).) Upon Bradley's motion, the state court stayed all claims involving Bradley with respect to the Lloyd's defendants (Plaintiffs in this case) on April 11, 2012, but the action is proceeding as to all other claims and parties.

The day after filing the state-court lawsuit, Bradley filed the present motion to dismiss for Plaintiffs' alleged failure "to join all parties who would be affected by the declaratory relief" and, alternatively, to stay it in light of his ongoing state-court action that includes the parties in this case. (See Doc. 4; Doc. 4-1.) After the parties briefed Bradley's motion,

5

the court requested further briefing as to how, if at all, Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), and Great American Insurance Co. v. Gross, 468 F.3d 199 (4th Cir. 2006), applied to the court's consideration of Bradley's motion to stay this case. (Doc. 9.) The parties have complied with the request and provided supplemental briefing. The motion is now ripe for resolution.

## II. ANALYSIS

### A. Motion to Dismiss

Bradley moves to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19.[3] (Doc. 4.) His briefing in support of this motion is sparse, arguing only that the naming of "Menno Pennink"[4] ("Pennink") and "Vintage Hill Partners" as "lienholders" on the declarations page of the insurance policy renders them necessary, and presumably

---

[3] Bradley also cites to an excerpt from the North Carolina Uniform Declaratory Judgment Act providing that when declaratory relief is sought, "all parties shall be made parties who have or claim any interest which would be affected by the declaration." (Doc. 5 at 5 (quoting N.C. Gen. Stat. § 1-260, which is based on § 11 of the Uniform Declaratory Judgments Act (1922)).) Of course, this remedial state law governing declaratory actions in state court has no application to the federal procedural issue before the court. See N.C. Gen. Stat. § 1-264 (North Carolina's Uniform Declaratory Judgment Act is remedial, its purpose being to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations). Cf. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937) ("[T]he operation of the Declaratory Judgment Act is procedural only.").

[4] The name on the 2009 application for insurance and the insurance policy is spelled as "Menno Pinnock." (Doc. 1-1; Doc. 1-3.)

indispensable, parties to this action. (Doc. 5 at 2, 5.) Notably, in Bradley's state-court action, he alleges that Pennink is a co-owner of the Property and that Vintage Hill Partners is the management company through whom the Property owners operated.[5] (Doc. 4-1 ¶¶ 2, 83.) Their listing as lienholders, Bradley baldly asserts, "should certainly establish that they will be affected" by the action before the court and are therefore necessary. (Doc. 5 at 2, 5.) Bradley also asserts that Commonwealth, the insurance broker representing the Lloyd's Plaintiffs, and Gilchrist, the agent through whom Bradley purchased the policy, are also necessary parties because he contends they participated in the underwriting decision. (Id. at 2-5.)

Plaintiffs contend the policy was issued solely to Bradley, the only "named insured" on the declarations page, and that none of the other persons or entities identified by Bradley is necessary under Rule 19 for adjudication of Plaintiffs' claim.

Rule 12(b)(7) permits dismissal of an action for failure to join a party under Rule 19. Rule 19 sets forth a two-step inquiry. Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 440 (4th Cir. 1999). First, the court must consider whether a non-party

---

[5] In addition to Pennink, Bradley's alleged co-owners are Suzanne Pennink, Matthias Geissler, Erica Geissler, and Angela Bradley. (See Doc. 4-1 (state court complaint).) There is no dispute that the other alleged owners are not listed as insureds on the policy.

7

is "required" (i.e., "necessary") to the action because of its relationship to the matter under consideration. Fed. R. Civ. P. 19(a)(1) ("required"); <u>Owens-Illinois</u>, 186 F.3d at 440 ("necessary"). A party is "required" if, without it, (1) the court cannot accord complete relief among the existing parties, or (2) the party (A) is so situated that disposing of the action in its absence may, as a practical matter, impair or impede its ability to protect its interest or (B) leave an existing party subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations. Fed. R. Civ. P. 19(a)(1). If a person has not been joined as required, the court must order that the person be made a party. Fed. R. Civ. P. 19(a)(2). If the person is not a "required party," however, the inquiry ends. Second, if a required non-party cannot be joined because, for example, its presence would destroy the court's diversity jurisdiction, the court must determine whether in equity and good conscience the proceeding should continue in its absence or whether the non-party is "indispensable" under Rule 19(b). <u>Owens-Illinois</u>, 186 F.3d at 440; <u>see</u> Fed. R. Civ. P. 19, advisory committee notes (2007 amendment) (discarding "indispensable" because the term was used only to express a conclusion reached in applying the tests of Rule 19(b) and thus was "redundant"). "Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when

8

the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." Owens-Illinois, 186 F.3d at 441. The court's decision must be made pragmatically, in the context of the substance of each case rather than by procedural formula. The court must consider the "practical potential for prejudice," including prejudice to those not before the court. Id.

Bradley, as the moving party, bears the burden of demonstrating entitlement to dismissal under Rule 19. Ultimately, he must "show that the person who was not joined is needed for a just adjudication." Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 92 (4th Cir. 2005) (quoting 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1609 (3d ed. 2001)). Unfortunately, Bradley has not developed his arguments beyond mere conclusory statements in his brief.

The court is persuaded that "Vintage Hill Partners," although appearing on the insurance policy declarations page as a "lienholder," is not a required party under the circumstances of this case. While Bradley's state-court complaint alleges that Vintage Hill Partners was the name under which he and his co-owners "handled their investment in the [Property]," (Doc. 4-1 ¶ 83), it is telling that Bradley has not included Vintage Hill Partners as a plaintiff in his state-court action. (See

9

id. ¶¶ 2-3.) Either Vintage Hills Partners does not exist as a legal entity (in which case it cannot be added as a party anyway) or, if it does, Bradley's failure to regard it as a required party in his state-court action makes it hard to conclude how it should be considered one here.

Bradley has also not demonstrated how the listing of Pennink as a "lienholder" on the policy's declarations page should render his presence required. In actuality and contrary to the representation on the declarations page, Bradley argues that Pennink is a co-owner of the Property, which tracks Bradley's allegations in his state-court complaint. (See id. ¶¶ 2-3, 77 (listing Pennink's interests solely as a co-owner, not as both an owner and lienholder).) Indeed, Bradley's state-court complaint refers to only one lienholder, New Century Bank South, which holds or held a deed of trust on the Property. (Id. ¶ 69, Ex. F.) Thus, it is difficult to conclude how Pennink's listing as a lienholder – which Bradley confesses is incorrect - would make Pennink a required party for that reason.

Bradley also fails to demonstrate that Commonwealth and Gilchrist are required parties. Bradley argues that both were agents of Plaintiffs. (Doc. 5 at 2-3.) At the hearing, Plaintiffs' counsel acknowledged that Commonwealth acted as its agent, and Plaintiffs' current complaint alleges as much. (Doc. 16 ¶ 1 (alleging that Lloyd's authorized Commonwealth to write

10

policies for it in the United States).) While it remains
unclear on whose behalf Gilchrist acted (Bradley contends that
"Commonwealth worked with Gilchrist to examine and provide facts
about the risk" and that they had "teamed up before to insure
the house" (Doc. 5 at 2)),[6] it does not matter. Even if he acted
as an agent of Lloyd's (Bradley's strongest argument for making
him a required party), Gilchrist's presence or absence would not
be necessary for a determination of the liability of the Lloyd's
Plaintiffs to the insured under the policy. See generally
Evanston Ins. Co. v. G & T Fabricators, Inc., 263 F.R.D. 309,
311 (E.D.N.C. 2009) ("[G]enerally, an insurance agent is neither
a necessary nor an indispensable party to either a rescission or
coverage action.").

Bradley has also not shown how the failure to include
Commonwealth or Gilchrist in this action will impair or impede
their ability to protect their interests. Certainly, a party
may call Gilchrist or employees of Commonwealth to testify as
witnesses, but any judgment without either one will not bind
them for *their* own potential liability. There is also no risk
that either Plaintiffs or Bradley would be left subject to

---

[6]   Legally, there is support for the proposition that Gilchrist may
have been acting for Bradley. See Williams v. Canal Ins. Co., 21 N.C.
App. 658, 661-62, 205 S.E.2d, 331, 333-34 (1974) (noting that "[a]n
insurance broker, like other brokers, is primarily the agent of the
person who first employs him, and, in the absence of a statute to the
contrary, he is the agent of insured as to all matters within the
scope of his employment" (quoting 44 C.J.S. Insurance § 140 (currently
§ 262))).

double, multiple, or otherwise inconsistent obligations if the non-parties are not added. The action, as presently constituted, will decide only the obligation of Plaintiffs to provide coverage under the policy.

The more difficult issue, however, is whether the five other alleged co-owners are required parties. Bradley does not advance this argument other than by noting that "[t]he underlying controversy is very complicated, and it affects numerous individuals and entities who are not joined as parties to this action. Five record owners of the house are not named parties." (Doc. 5 at 1.) Of course, Plaintiffs argue that only Bradley, as the named insured, is required. But they, too, provide no legal guidance.

The court's independent research reveals one decision where the court found a husband and wife, who were co-owners of real property (as tenants in the entireties), required parties to an action over insurance proceeds for the property because a resolution by the wife's lawsuit could as a practical matter impair the husband's interest in recovery. Liggon-Redding v. Am. Sec. Ins. Co., No. 3:06cv227, 2009 WL 3101068 (M.D. Pa. Sept. 23, 2009). Here, Bradley has not specified the nature of the co-ownership of the absent five persons, making the necessity determination muddier. Moreover, the record presently reflects that the state-court action is founded only on

12

allegations that Bradley may have sought to obtain insurance coverage for the Property as a representative of the co-owners. Indeed, Bradley alleges that someone forged his name on the policy application, and not that the co-owners intended to be named as insureds under the policy. Therefore, there is some basis to believe that any risk of impairment of the co-owners' interest by their absence may be minimized by Bradley's presence. Under this scenario, the claimed interest of any co-owner may be dependent upon, and fully represented by, that of Bradley, the named Defendant. In appropriate cases, joinder is not compelled where an existing party is capable of serving as a proxy for an absent party when the interests of the two are identical. See Ohio Valley Envtl. Coal. v. Bulen, 429 F.3d 493, 504-05 (4th Cir. 2005) (finding no abuse of discretion in district court's refusal to join non-parties).

In light of the parties' incomplete analyses, the court cannot say that Bradley has demonstrated that a non-party must be joined under Rule 19(a)(1). There is therefore no need to go further in the analysis, and Bradley's motion to dismiss pursuant to Rule 12(b)(7) will be denied at this time.[7]

---

[7] Even if Bradley could demonstrate that the co-owners are required parties, the record reflects that all are North Carolina citizens. Therefore, their presence would not destroy the court's diversity jurisdiction, and dismissal would not be warranted unless Plaintiffs refused to add them to the action.

**B. Discretionary Stay**

Bradley moves in the alternative under 28 U.S.C. § 2201 and Rule 19 to stay this action pending the outcome of the state-court lawsuit which he contends will resolve all claims regarding insurance coverage for the Property. (Doc. 4.) Bradley argues that Plaintiffs have omitted key parties who have a stake in this litigation – the Property co-owners, Commonwealth, and Gilchrist – whose rights and liability should be determined in one action. He requests that this court stay the action in favor of the ongoing state-court lawsuit to provide "the best, fairest, cleanest, most efficient, least complicated, and most binding way for the parties to resolve all issues." (Doc. 13 at 13.) Plaintiffs contend that the only issue they have raised is whether they owe Bradley, the sole named insured on their policy, any duty of indemnity.

Initially, each party addressed Bradley's motion under the Declaratory Judgment Act, 28 U.S.C. § 2201. Section 2201(a) provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 42 U.S.C. § 2201(a). The Act "confer[s] on federal courts unique and substantial discretion in deciding whether to

14

declare the rights of litigants." <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 286 (1995).

The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" <u>Id.</u> at 287 (citations omitted). As a consequence, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." <u>Id.</u> at 288. The court's discretion "is especially crucial" when a parallel or related proceeding is pending in state court. <u>New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.</u>, 416 F.3d 290, 297 (4th Cir. 2005). In such cases, district courts have "rather wide discretion" to decline jurisdiction. <u>Centennial Life Ins. Co. v. Poston</u>, 88 F.3d 255, 257 (4th Cir. 1996).

In perceiving the issue as one falling solely under section 2201, the parties initially argued the applicability of the factors of the balancing test set forth originally in <u>Brillhart v. Excess Ins. Co.</u>, 316 U.S. 491 (1942), and <u>Wilton</u> (the "<u>Brillhart</u>/<u>Wilton</u>" standard). (Docs. 6, 7.) Those factors, as articulated by the Fourth Circuit in <u>United Capitol Insurance Co. v. Kapiloff</u>, 155 F.3d 488 (4th Cir. 1998), are as follows:

15

> (1) whether the state has a strong interest in having
> the issues decided in its courts; (2) whether the
> state courts could resolve the issues more efficiently
> than the federal courts; (3) whether the presence of
> "overlapping issues of fact or law" might create
> unnecessary "entanglement" between the state and
> federal courts; and (4) whether the federal action is
> mere "procedural fencing," in the sense that the
> action is merely the product of forum-shopping.

155 F.3d at 493-94.[8]

Each party, however, failed to account for Plaintiffs' rescission claim, which facially is not a declaratory judgment claim, in the analysis. Abstention considerations with respect to nondeclaratory claims are usually undertaken pursuant to the "exceptional circumstances" test, a more demanding standard for abstention, set out in Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976) (the "Colorado River" standard). That standard, as will be explained shortly, reflects the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Id.

When confronted with nondeclaratory claims (including those for rescission) as well as declaratory ones - known as a "mixed" complaint - courts have taken different approaches with respect to whether (1) Brillhart/Wilton applies to all claims, (2) Brillhart/Wilton applies only to the declaratory claims, with the stricter Colorado River standard applying to nondeclaratory

---

[8]  Fourth Circuit decisions also cite, as did the court in Kapiloff and in Great American, to Nautilus Insurance Co. v. Winchester Homes, Inc., 15 F.3d 371, 376 (4th Cir. 1994), for the standard.

16

ones, or (3) Colorado River applies to all claims. The Fourth Circuit acknowledged the problem in Great American, 468 F.3d at 210-11. There, an insurance company brought an action for (1) declaratory relief that the fraud exclusion provision of an insurance policy barred coverage for all losses, including defense costs, (2) rescission of the policy based on alleged fraudulent and material misrepresentations made in conjunction with its procurement, and (3) a demand for refund of certain litigation costs already advanced pursuant to the policy. Id. at 204. The Fourth Circuit concluded that its jurisprudence "suggests that, in a 'mixed' complaint scenario, the Brillhart/Wilton standard does not apply, at least to the nondeclaratory claims." Id. at 211 (citing Chase Brexton Health Servs. v. Md., 411 F.3d 457, 466-67 (4th Cir. 2005) (stating that the Brillhart/Wilton standard does not apply when a declaratory judgment claim is joined with a nondeclaratory claim, such as a claim for damages or injunctive relief)). The court declined to "express a definitive view" on the proper standard in a so-called "mixed case," however, because it found that abstention was not warranted under even the "more relaxed" Brillhart/Wilton standard. Id.

Complicating the analysis here is the fact that Plaintiffs' current complaint contains a declaratory claim that includes a request for money damages, albeit vague. (Doc. 16 ¶ 25 (seeking

17

"such other financial damages . . . as may be proven at trial.").) Further complicating the consideration is the fact that the nondeclaratory claim (rescission) appears to be a mirror image of the request for declaratory relief – seeking invalidation of the insurance contract – and will turn on the same facts. These are potentially relevant because four years after Great American, the Fourth Circuit, in an unpublished opinion, stated that "[a] perfunctory inclusion of nondeclaratory requests for relief does not suffice to remove a plaintiff from the ambit of the Brillhart/Wilton rule. A declaratory judgment plaintiff may not convert a district court's discretionary jurisdiction under Brillhart/Wilton into nearly mandatory jurisdiction under Colorado River [], simply by tossing in dependent or boilerplate nondeclaratory requests." Riley v. Dozier Internet Law, PC, 371 F. App'x 399, 404 n.2 (2010) (unpublished). The Riley analysis does not apply, however, when the additional claim is not dependent on the declaratory claim but is a wholly independent. Educ. Sys. Fed. Credit Union v. Cumis Ins. Soc., Inc., Civ. Action No. DKC 09-3217, 2010 WL 1930582, at *3 (D. Md. May 12, 2010) (addressing additional claim for breach of contract).

In assessing Plaintiffs' complaint, the court concludes that the separate rescission claim, while seeking an outcome (namely, no duty to indemnify) nearly identical to two of the

18

three declaratory claims (Counts Two and Three), does not *depend* on the relief sought in them.  Thus, the Riley consideration does not appear to apply, and the court will apply the Colorado River standard to that claim.  The court need not resolve whether Colorado River or Brillhart/Wilton applies to the declaratory claims, however, because, for the reasons set forth below, the court finds that abstention is warranted under both tests.

### 1.  Rescission Claim

A predicate to applying the Colorado River factors is the existence of a parallel state court proceeding.  Gannett Co. v. Clark Constr. Grp., Inc., 286 F.3d 737, 741 (4th Cir. 2002).  A parallel proceeding exists "if substantially the same parties litigate substantially the same issues in different forums." Id. at 742 (quoting New Beckley Mining Corp. v. Int'l Union, 946 F.2d 1072, 1073 (4th Cir. 1991)).  Thus, the threshold requirement consists of two prongs: (1) substantially the same parties; and (2) substantially the same issues.  Only after meeting this requirement is Colorado River implicated.

In the present court, there are three parties: the two Lloyd's (and their names) and Bradley.  The underlying state-court action includes these same parties; additionally, it includes Gilchrist, Commonwealth, and the five other alleged Property owners.  On its face, these may not appear to be

19

"substantially the same parties" required by New Beckley Mining, 946 F.2d at 1073. However, the "substantially same parties" requirement appears to be intended to address situations where there are more parties in *federal court* than in state court. See Chase Brexton, 411 F.3d at 464 (involving seven plaintiffs in the federal court proceeding, only two of whom were involved in the state court proceeding; abstention would deprive five of the parties of their opportunity to litigate); cf. Great American, 468 F.3d at 208 (noting plaintiff in Colorado River was a party to the state-court action, unlike case before the court). The reason for this is plain: a federal court that abstains when the parallel state court proceeding has fewer parties will leave some of its parties in limbo. That is not the case here. All parties in the present case are in the state-court action. Thus, for purposes of determining whether the actions are parallel, the inclusion of the additional parties in the state case is insufficient to render the parties not "substantially" the same.

The second prong of the threshold question is whether the parties are litigating substantially the same issues. Much like the first prong, there are more issues in the underlying state-court action than in this case. This is not surprising given the inclusion of more parties and the narrow focus of the action before this court. However, the issues to be litigated in this

20

court are *substantially* the same as those in the state-court
action: the validity of the contract; whether it was procured
by fraud; and whether Plaintiffs are liable for all or part of
the loss.[9] Yet Plaintiffs argue that the cases are not parallel
because the state court has stayed Bradley's claims. (See Doc.
8-1.) The stay is insufficient to invalidate the same issues
requirement. The state court stay is predicated only on the
pendency of the present federal claim against Bradley. If this
court abstains, the state court may proceed on all claims.[10]

Accordingly, the threshold requirement has been met, and
the Colorado River analysis is necessary.

"[T]he decision whether to dismiss a federal action because
of parallel state-court litigation does not rest on a mechanical
checklist, but on a careful balancing of the important factors
as they apply in a given case, with the balance heavily weighted
in favor of the exercise of jurisdiction." Moses H. Cone Mem'l

---

[9] The substantially same nature of the state-court claims by the
Lloyd's insurers and their claims in this court is illustrated by the
"Answer and Defenses" they filed in state court prior to the stay of
Bradley's claims. The Lloyd's insurers' Seventh and Eighth Defenses
assert that the claims of Bradley and his co-plaintiffs are barred and
the equitable doctrine of rescission applies to the extent facts
material to the risks at issue were concealed, omitted, or
misrepresented. (See Doc. 13-1 at 19.) The Nineteenth Defense
asserts that coverage extended only to dwellings as defined in the
policy, and the Twentieth Defense asserts coverage exists, if at all,
only to the extent of Bradley's one-sixth ownership in the Property.
(Id. at 21.) These state-court defenses track the rescission and
declaratory relief counts in the second amended complaint.

[10] If the state court for any reason does not lift the stay, the
parties would be free to revisit the issue in this court.

<u>Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 16 (1983). The <u>Colorado River</u> standard is comprised of four factors from <u>Colorado River</u> and two additional factors articulated in <u>Moses H. Cone</u>, as follows:

> (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

<u>Great Am.</u>, 468 F.3d at 207-08. No one factor is necessarily determinative. <u>Colorado River</u>, 424 U.S. at 819. This court will make "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling [sic] against that exercise." <u>Id.</u> at 818-19. In balancing the <u>Colorado River</u> factors, courts should undertake "a pragmatic, flexible" approach to "the realities of the case at hand." <u>E.g.</u>, <u>Sto Corp. v. Lancaster Homes, Inc.</u>, 11 F. App'x 182, 187 (4th Cir. 2001) (unpublished per curiam) (finding district court did not abuse its discretion by concluding case presented exceptional circumstances; two <u>Colorado River</u> factors slightly favored abstention and one overwhelmingly favored it); <u>see</u> <u>Massey Energy Co. v. Am. Int'l Specialty Lines Ins. Co.</u>, 2:09-cv-00029, 2009 WL 1034243, at *7-

9 (S.D.W. Va. Apr. 16, 2009) (abstaining after raising Colorado River sua sponte; finding lack of property with respect to the first factor was not enough to make abstention inappropriate in light of other factors favoring abstention (citing Sto Corp.)).

Under Colorado River, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." 424 U.S. at 817. "Despite what may appear to result in a duplication of judicial resources, the rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." McLaughlin v. United Va. Bank, 955 F.2d 930, 934 (4th Cir. 1992) (quoting McClellan v. Carland, 217 U.S. 268, 282 (1910)) (internal citation marks omitted). However, situations arise that require the issue to be litigated in state court. In deciding whether to abstain from hearing a properly brought case in federal court, the court must remember that this principle of abstention "rest[s] on considerations of '(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" Colorado River, 424 U.S. at 817 (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183 (1952)).

The first factor is whether the litigation involves property subject to the court's in rem jurisdiction to the exclusion of others. This is not the case. This is a contract

claim, and neither this court nor the state court has assumed jurisdiction over the Property.

The second factor is whether the federal forum is inconvenient. The state-court action is pending in Durham, which lies in this federal district. While a trial in Durham's federal courthouse would provide a nearly identical location, even a trial in Winston-Salem, the home of the district's farthest courthouse, would be only marginally more inconvenient. Cf. Colorado River, 424 U.S. at 805 (federal courthouse was 300 miles away from the location in question).

The third factor is the desirability of avoiding piecemeal litigation. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." Gannett Co., 286 F.3d at 744 (quoting Am. Int'l Underwriters, Inc. v. Cont'l Ins. Co., 843 F.2d 1253, 1258 (9th Cir. 1988)). For abstention to be appropriate, however, "retention of jurisdiction must create the possibility of inefficiencies and inconsistent results beyond those inherent in parallel litigation, or the litigation must be particularly illsuited for resolution in duplicate forums." Id. at 744; see Chase Brexton, 411 F.3d at 465 (noting mere potential for conflict of results does not, "without more," warrant a stay).

24

Plaintiffs contend there is no threat of piecemeal litigation because (1) Bradley's claims are stayed, (2) this court's determination on Bradley's claims would bind all parties in the state-court action, (3) if the insurance policy is declared void, the state-court tort claims would fall by the wayside, and (4) if the court finds that all required (necessary) persons are already party to this action, it demonstrates that the court can resolve Plaintiffs' claims without impairing any person's ability to protect his or its interest.

But these are unpersuasive responses. Most importantly, only Bradley's claims against Lloyd's are stayed in the state-court action. His claims against Commonwealth and Gilchrist and the claims of the five other Property co-owners in the state-court action are proceeding apace. Even if Bradley's claims remained stayed (which is unlikely), identical issues as to the validity of, and coverage under, the policy are likely to arise because the co-owners assert, among other things, a right to policy coverage through Bradley's application on their behalf. Moreover, in the state-court action the Lloyd's insurers assert an affirmative defense that all claims under the policy are barred and the equitable doctrine of rescission applies "[t]o the extent Plaintiffs [Bradley and the co-owner plaintiffs in that action] . . . intentionally or unintentionally failed to

disclose or concealed, omitted, or misrepresented facts material to the risks at issue" in that litigation. (Doc. 13-1 at 19.) This is precisely the issue here. Thus, there would be concurrent and overlapping litigation as to the fundamental issue at stake in the federal case.

Further, if the court proceeds in this case, it is a near certainty that Bradley will assert, as he did (and as the co-owners are doing) in state court, that the Lloyd's insurers are bound by the actions and/or omissions of Commonwealth, their acknowledged agent, and Gilchrist – precise issues being litigated in the state-court action even under the current stay. Indeed, during the hearing on the present motion, Plaintiffs' counsel stated that if the federal action is permitted to proceed, he anticipated filing a motion to stay _all_ the state-court proceedings, which is tantamount to an admission of entanglement.[11] If the state court were to enter such a stay, the result would certainly be piecemeal litigation. And if the court were to decline to stay its proceedings, it is likely that both courts would consider the same or intertwined issues. This is not a case of dissimilar disputes. Cf. Am. Bankers Ins. Co. of Fla. v. First State Ins. Co., 891 F.2d 882, 885 (11th Cir.

---

[11] Although "entanglement" is listed as a factor under Brillhart/Wilton applicable to requests for declaratory judgment, the entanglement here will likely lead to piecemeal litigation, a factor under Colorado River. See Colorado River, 424 U.S. at 818 (citing Brillhart for the third factor, "the desirability of avoiding piecemeal litigation").

1990) (finding that because "the underlying disputes are different," the occurrence of "some piecemeal litigation" was insufficient to warrant abstention). Rather, both courts are being asked to resolve the same dispute with respect to insurance coverage under the policy, and in doing so will rely on the same evidence and legal theories. The specter of parallel proceedings progressing piecemeal is manifest. Consequently, this factor weighs heavily in favor of Bradley.

The fourth factor is who obtained jurisdiction first and the relative progress in each case. Plaintiffs are correct that they obtained jurisdiction first. While the court does not question the propriety of their having filed in this court, Plaintiffs did so almost immediately after denying Bradley's claim, giving Bradley little opportunity to file first.[12] The Supreme Court cautions, moreover, that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Moses H. Cone, 460 U.S. at 21. The relative progress of the state case favors Bradley. Lloyd's indicated at the hearing that they have already filed motions for dismissal in the state-court action, and the case had a mediation date set for next month and tentative trial date the following month.

---

[12] Plaintiffs were of course aware at that time that there were five other alleged owners of the Property and, therefore, that litigation by those owners as well as Bradley was likely. (See Doc. 4-1, Ex. C (August 15, 2011 letter of Plaintiffs' counsel).)

27

(See Doc. 13-3.) Additionally, there has been progress on discovery, although it is only at the written discovery stage (the state-court plaintiffs served discovery with the complaint and the Lloyd's insurers responded and produced a large volume of documents). (Doc. 13 at 2-4.) Further, Gilchrist, a defendant in the state-court action, recently filed an answer. (See Doc. 15.) Here, the court has only today satisfied itself that the second amended complaint sets forth sufficient facts for its subject matter jurisdiction, Bradley has not filed an answer, and the parties have yet to engage in any discovery. On balance, this factor favors Bradley because of the advancement of the state-court action and the apparent jockeying for a quick filing by the parties.

The fifth factor is whose law controls. This case involves question of state, not federal, law. Bradley contends that this factor weighs in his favor, citing Mitcheson v. Harris, 955 F.2d 235 (4th Cir. 1992), for the proposition that states have a strong interest in interpreting their own law. Id. at 237 (addressing dismissal of declaratory action). However, the present case deals with settled principles of state contract, insurance, and agency law and does not present "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case

28

at bar." Colorado River, 424 U.S. at 814. If this factor favors Bradley, it does so only marginally.

The sixth factor is the adequacy of the state proceeding to protect the parties' rights. Plaintiffs make no claim to this factor aside from suggesting that it is unclear whether the North Carolina state court can adequately protect their rights. (Doc. 11 at 7.) This argument is sheer speculation. The North Carolina state court is fully capable of protecting the rights of all parties. This factor weighs in favor of Bradley.

Having carefully considered these factors and recognizing that this court has a "virtually unflagging responsibility" to exercise jurisdiction in cases brought before it, the court nevertheless concludes that this case presents the type of "exceptional circumstance" envisioned by Colorado River. The state and federal actions raise virtually identical claims and legal theories, and piecemeal litigation and entanglement are likely to occur if this case were permitted to proceed. Consequently, the rescission claim should be stayed.

### 2. Declaratory Claims

As noted, there is a question in the Fourth Circuit as to the standard to be applied to declaratory claims in the "mixed" complaint scenario. The court need not determine which standard applies here because a stay is warranted under either standard. If the Colorado River standard applies, the declaratory claims

29

should be stayed for the same reasons as the closely-related nondeclaratory claims. If the "more relaxed" _Brillhart_/_Wilton_ standard applies, the court need not engage in a lengthy analysis. The federal lawsuit does not raise difficult or important state law issues, and the state court is better positioned to resolve the claims and issues more efficiently in that all parties are present before it. In addition, there is some indication that the federal action, which was filed quickly after denying coverage and only seeks to ward off an inevitable state-court action for damages under the insurance policy, was a calculated filing. Most importantly, however, is the fact that the federal action will result in inevitable entanglement with state-court determinations of identical claims and issues, for the reasons noted above. Accordingly, abstention over the declaratory claims is appropriate.

## III. CONCLUSION

To be sure, litigation should not be stayed when a defendant brings an action in state court solely in the hopes of avoiding a federal court determination on the merits. Here, however, Bradley presents a compelling case that a stay of the federal action is appropriate.

IT IS THEREFORE ORDERED that:

1. Bradley's motion to dismiss pursuant to Rules 12(b)(7) and 19 (Doc. 4) is DENIED.

2.  Bradley's Motion to Stay, as renewed by his Objection to Second Amended Complaint and Motion to Stay Proceedings Pursuant to Federal Rules 12(b)(7) and 19 (Docs. 4, 17), is GRANTED, and this action shall be STAYED pending further order of the court.

3.  Bradley's Objection to Amended Complaint and Motion to Stay Proceedings Pursuant to Federal Rules 12(b)(7) and 19 (Doc. 12) is DENIED AS MOOT.

4.  Bradley's motion to stay the time to file answer (Doc. 17) is GRANTED and shall extend until twenty (20) days after the lifting of the stay imposed by this Order.

5   The parties are directed to file joint, written status reports concerning the progress of the state-court case every two months, beginning October 1, 2012.

                              /s/   Thomas D. Schroeder
                              United States District Judge

August 8, 2012

31